UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NIRVANA HEALTH SERVICES, INC.,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 6:18-cv-2044-Orl-40DCI

SECRETARY OF THE UNITED
STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES and
ADMINISTRATOR FOR THE
CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

    Defendants.
_____/

## ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Docs. 1, 2 (the "**TRO Motion**" and "**PI Motion**")), filed November 28, 2018. Plaintiff's motion seeks to enjoin Defendants, Secretary of the U.S. Department of Health and Human Services and Administrator for the Centers for Medicare and Medicaid Services, from withholding reimbursement for Medicare claims, and also seeks reimbursement of Medicare claims arising to Plaintiff. (Docs. 1, 2). A billing dispute between the parties is currently on appeal to an administrative law judge ("**ALJ**") to determine whether Defendants overpaid Plaintiff for Medicare claims. Upon consideration of the TRO Motion, supportive filings, and the applicable law, the Court finds that the motion is due to be denied. The Court will take the PI Motion under advisement and sets forth a briefing schedule herein.

I.   **BACKGROUND**

Plaintiff, Nirvana Health Services, Inc. ("**Nirvana**"), brings this action against Defendants, alleging procedural due process, substantive due process, *ultra vires*, and Administrative Procedures Act, 5 U.S.C. § 705, claims. (Doc. 5 (the "**Verified Complaint**")).[1] Plaintiff's TRO Motion—which seeks a temporary restraining order enjoining Defendants from recouping amounts allegedly owed by Plaintiff and ordering Defendants to reimburse Plaintiff for Medicare claims arising during the pendency of Nirvana's administrative appeal—is now before the Court. (Docs. 1, 2).

Nirvana is a home healthcare service provider. (Doc. 5, ¶ 1). Plaintiff employs 217 people, services 472 patients, and has been in business for twenty-five years. (Doc. 2, p. 3; Doc. 5, ¶ 50). Government agents have initiated a recoupment action against Plaintiff for past Medicare claims, threatening Plaintiff's business, and causing Plaintiff to institute this action seeking relief from the Court.

Claims for Medicare payments for home healthcare must be approved by the Department of Health and Human Services ("**DHS**"), which processes them through Centers for Medicare and Medicaid Services ("**CMS**") and its Medicare Administrative Contractors ("**MACs**"). MACs are government contractors that process and make payments on claims. Palmetto GBA, LLC ("**Palmetto**") is the MAC assigned to Plaintiff's geographic area. (Doc. 5, ¶ 19).

Paid Medicare claims are subject to "post-payment review" by Zone Program Integrity Contractors ("**ZPICs**"). (*Id.* ¶ 20). "ZPICs are paid based on the amount of

---

[1] The Complaint names as Defendants the Secretary of the U.S. Department of Health and Human Services and the Administrator for the Centers for Medicare and Medicaid Services. (*Id.* at p. 1).

Medicare reimbursement they recover from providers" for improper payments. (*Id.* ¶ 22). On September 1, 2017, SafeGuard LLC ("**SafeGuard**")—the ZPIC assigned to Plaintiff's geographic area—sent Plaintiff a letter stating that Defendants overpaid approximately $3,242,185.77 in Medicare claims. (*Id.* ¶ 40). This overpayment amount was calculated based on review of a sample of sixty-four claims paid to Plaintiff by Medicare. (*Id.* ¶¶ 37). The overpayment findings from the sample were then extrapolated to determine the total Medicare overpayment. (*Id.* ¶¶ 37–40).

Plaintiff immediately requested a redetermination, and thereafter received a partially favorable redetermination from Palmetto reducing the amount owed to $2,919,292.43. (*Id.* ¶ 42). Next, Plaintiff requested review by a Qualified Independent Contractor, C2C Innovative Solutions, Inc. ("**C2C**"), which ultimately rendered a partially favorable decision on May 14, 2018. (*Id.* ¶ 44). On July 23, 2018, Palmetto issued another demand letter informing Plaintiff that it would recoup $2,985,121.53 in overpayments after thirty days. (*Id.* ¶ 45). On June 26, 2018, Plaintiff timely requested an ALJ hearing to challenge the overpayment determinations. (*Id.* ¶ 46).

Defendants thereafter began the recoupment process against Plaintiff. (*Id.* ¶ 47). Plaintiff's request for an "Extended Repayment Schedule" was met with "repayment terms that are unrealistic and cannot be met." (*Id.* ¶ 48). The Verified Complaint maintains that "Medicare [payments] constitute a large portion of Plaintiff's revenues[, and] Plaintiff is not financially able to survive should CMS continue with recoupment." (*Id.* ¶ 49). Because of a current backlog of appeals matters, Plaintiff faces a three-to-five-year wait for its ALJ hearing. (*Id.* ¶ 35). Therefore, Plaintiff now seeks to enjoin Defendants' recoupment activities. (Doc. 2).

## II. STANDARD OF REVIEW

A district court may issue a TRO without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). TROs are granted in only limited circumstances. "Such orders will be entered only in emergency cases to maintain the status quo until the requisite notice may be given and an opportunity is afforded to opposing parties to respond to the application for a preliminary injunction." Local Rule 4.05(a).

To obtain a TRO, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) irreparable injury "so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible"; (3) that the balance of the equities favors the movant; and (4) that a TRO would not harm the public interest. Local Rule 4.05(a)(2)–(4). A TRO is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (emphasis added). Ultimately, issuing a temporary restraining order or a preliminary injunction should be "the exception rather than the rule." *Siegel*, 234 F.3d at 1176.

### A. Irreparable Injury

The TRO Motion fails to establish the irreparable injury component and is therefore due to be denied. With respect to irreparable injury, Plaintiff maintains that it "will go out of business long before it has an opportunity to be heard by an impartial adjudicator, much

less complete the rest of the administrative appeals process to which it is statutorily entitled to participate." (Doc. 2, p. 2). The Verified Complaint asserts that "[i]f the process continues, Plaintiff will be forced to close its doors." (Doc. 5, ¶ 50). Resultantly, Nirvana's employees would lose their jobs and Nirvana's patients would suffer. (*Id.*).

"A showing of irreparable injury is the 'sine qua non of injunctive relief.'" *Siegel*, 234 F.3d at 1176 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). The showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.*

As a preliminary matter, the Court finds that the potential injuries inflicted to Nirvana's employees and patients are not considered under the irreparable injury prong. Those injuries are properly considered under the public interest factor. *See Mama's Enters. v. United States*, 883 F. Supp. 2d 1128, 1137 (N.D. Ala. 2012).

As to irreparable injury, Plaintiff's averments that it will be forced to close absent a TRO are too speculative to satisfy this factor. Nirvana's owner, Leo Mendez, submitted a declaration attesting that "[i]f [CMS] is allowed to continue with recoupment, Nirvana will be forced to shut down the business and cease all patient care as Nirvana is not financially able to survive recoupment of its Medicare payments." (Doc. 2-7, ¶ 5). This declaration, along with Plaintiff's attendant submissions, do not sufficiently establish that Nirvana will be forced to close "imminent[ly]" absent a TRO or that "a hearing on the application for preliminary injunction is impractical if not impossible." *See Siegel*, 234 F.3d at 1176; Local Rule 4.05(a)(2). Accordingly, Plaintiff has not carried its burden of proving entitlement to an *ex parte* TRO.

5

It also bears mentioning that this Court recently found in a strikingly similar case that a healthcare service provider plaintiff did not have a property interest in continued Medicare payments after the government instituted a Medicare recoupment action against the plaintiff. *Alpha Home Health Sols., LLC v. Sec'y*, No. 6:18-cv-1577, 2018 WL 6175132, at *8 (M.D. Fla. Nov. 27, 2018). That finding resolved the plaintiff's motion for a preliminary injunction based on alleged procedural due process violations and is clearly implicated by Plaintiff's now-pending Motion. *See id.* The parties are directed to address *Alpha Home Health Sols.* in the briefing for Plaintiff's Preliminary Injunction Motion.

### III.  CONCLUSIONS

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's TRO Motion (Docs. 1, 2) is **DENIED**.
2. The Court will **TAKE UNDER ADVISEMENT** Plaintiff's PI Motion. (Docs. 1, 2).
    a. Plaintiff is **DIRECTED** to immediately serve on Defendants: (1) copies of the Complaint and its exhibits; (2) a copy of the TRO Motion; and (3) a copy of this Order. Plaintiff is further **DIRECTED** to file proof of service on or before **Monday, December 3, 2018**.
    b. On or before **Monday, December 10, 2018**, Defendants may file one consolidated response to the PI Motion and include any opposing declarations or affidavits. *See* Local Rules 3.01(b), 3.01(f), & 4.06(b)(3).
    c. On or before **Friday, December 14, 2018**, Plaintiff may file a reply to Defendants' response. Plaintiff's reply shall be directed only to

Defendants' response; shall not include any new issues, rebuttal affidavits, or other evidence in support; and shall not exceed five (5) pages.

3. At the close of briefing, the Court will notify the parties whether it requires the benefit of a hearing. If the Court deems a hearing necessary, the Court intends to hear the matter on **Thursday, December 20, 2018**, at 10:00 a.m. in Courtroom 4B of the Orlando Courthouse, 401 W. Central Boulevard, Orlando, Florida, 32801. If either party is unavailable on the aforementioned date, they shall promptly notify the Court.

**DONE AND ORDERED** in Orlando, Florida on November 29, 2018.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties